**Ray KNOX, Appellant (Defendant),**

v.

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

**No. 92–152.**

Supreme Court of Wyoming.

March 19, 1993.

Richard C. Slater of Bayless & Slater, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., Mary B. Guthrie, and Barbara L. Boyer, Sr. Asst. Attys. Gen., Cheyenne, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

GOLDEN, Justice.

Appellant Ray Knox appeals his conviction of aiding and abetting and attempted manslaughter. Judgment and sentence

were entered by the district court after it accepted appellant's guilty plea. Appellant asserts that the state violated the Interstate Agreement on Detainers Act (IAD),[1] but first we address the scope and effect of appellant's guilty plea.

We affirm.

In his initial brief appellant raises two issues:

ISSUE I:

The trial judge erred and abused his discretion when he failed to rule for over three months on Appellant's Motion to Disqualify Judge.

ISSUE II:

The trial court erred when it failed to grant Appellant's Motion to Dismiss pursuant to the Interstate Agreement on Detainers, W.S. 7–15–101, et seq. (1987).

Appellee State of Wyoming presented a single issue:

Whether Mr. Knox waived his arguments when he plead guilty.

In a reply brief, appellant framed the issue differently:

Did Appellant Ray Knox knowingly and voluntarily waive his right to raise issues pertaining to the Interstate Agreement on Detainers?

### PROCEDURAL HISTORY

The events which form the roots of appellant's conviction are very familiar to this court. Twice we have heard appeals arising out of these same operative facts. In the interest of brevity, we refer the reader to *Jones v. State*, 777 P.2d 54, 56–57 (Wyo. 1989) (*Jones I*) which fully describes the circumstances giving rise to appellant's conviction.[2] In this appeal we are more concerned with the procedural history which occurred after the initial criminal conviction.

In 1988, appellant and a codefendant (Jones) were convicted in district court of conspiracy to commit murder. On appeal to this court, both appellant's and his codefendant's convictions were overturned and remanded for new trials. *Jones I*, 777 P.2d at 61. At the time, appellant was in federal prison serving time on a federal conviction arising out of the same criminal acts. Pursuant to the IAD, appellant was returned to Wyoming on December 1, 1989, for a second trial. On remand, appellant's and codefendant's trials were severed and codefendant's trial was held first.

In codefendant's second trial, he was convicted of conspiracy to commit murder. Immediately after codefendant's second conviction, appellant entered into a plea agreement with the county attorney, whereby appellant plead guilty to the lesser charges of aiding and abetting and attempted manslaughter. Appellant's sentencing was postponed until after certain conditions of the agreement occurred. The other terms and conditions of appellant's plea agreement are ambiguously recorded in the transcript from the change-of-plea hearing.

On June 13, 1991, this court reversed codefendant's conviction obtained through his second trial and remanded for still another trial. *Jones v. State*, 813 P.2d 629 (Wyo.1991) (*Jones II*). The basis for reversal in *Jones II* was peculiar to codefendant's second trial and did not involve an issue shared with appellant.[3]

In April of 1992, almost a year after reversal in *Jones II*, appellant filed a motion to dismiss, claiming error in failing to provide speedy sentencing. Two months later, in June of 1992, the district court denied appellant's motion to dismiss because appellant had waived any objections to speedy sentencing at his plea agreement hearing. Soon thereafter, on June 29,

---

1. *See* Wyo.Stat. § 7–15–101 to 105 (1987). The IAD was enacted to "encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints."

2. *See also, Jones v. State*, 813 P.2d 629 (Wyo. 1991), which involved an appeal from the retrial of appellant's co-defendant.

3. Codefendant's conviction was overturned because a police officer, a witness for the prosecution, had testified falsely. *Jones II*, 813 P.2d at 635.

1992, appellant was sentenced according to the May 11, 1990, plea agreement.

Because the plea agreement is at the core of this appeal, its terms will be discussed in greater detail as we address the issues.

### DISCUSSION

■ Before we can address appellant's claim of error under the speedy trial provisions of the IAD, we must first determine whether appellant is now foreclosed from raising the issue on appeal. Generally speaking, once a guilty plea has been properly entered the defenses or objections which a defendant can raise are severely limited. *Davila v. State*, 831 P.2d 204, 205–06 (Wyo.1992).

### PLEA AGREEMENT

■ Appellant interprets the plea agreement as preserving his right to pursue the issue of state compliance with the IAD. In opposition, the state asserts that appellant waived any right to raise an IAD issue once the conditions of the plea agreement were fulfilled. Because the plea agreement was not reduced to a more specific written document, it is necessary to quote from the change-of-plea hearing for a complete understanding of the terms of appellant's guilty plea.

[DEFENSE COUNSEL]: The county attorney's office has offered, and [Appellant] and I have accepted, that [Appellant] will today enter a plea of guilty to aiding and abetting and attempt to commit manslaughter. * * * That [Appellant] will then be returned to the custody of federal authorities * * * and that the appeal of [Codefendant] will proceed on whatever issues [Codefendant] has [sic] including, as we understand it, the interstate agreement on detainer act [IAD] issue; and in the event that [Codefendant's] appeal—conviction is overturned on the IAD issue, that the state will then dismiss the charges against [Appellant]. [Appellant], through me, will be permitted to petition along with [Codefendant] on a writ of cert on the IAD issue. [Appellant] and I will waive under the IAD the return to jurisdiction dismissal issue. * * * *We'll waive speedy trial issues*

*from and after May 11 this year [1990]*, and my understanding is also if [codefendant's conviction] is overturned for some reason other than the IAD and [Codefendant] is returned for trial, [Appellant] will still be sentenced on the eight to twelve, consecutive to the present federal sentence * * *.

\* \* \* \* \* \*

[COUNTY ATTORNEY]: That's correct, your Honor. My understanding is that the only way that [Appellant's] case would be dismissed would be if the Supreme Court would reverse [Codefendant's conviction] and dismiss and not remand.

[DEFENSE COUNSEL]: Or reverse [Appellant] and reverse on a writ of cert.

[COUNTY ATTORNEY]: On the basis of the IAD issue and not any other issues.

[DEFENSE COUNSEL]: On [Appellant], yes, sir.

[COUNTY ATTORNEY]: Is that everyone's understanding of our agreement?

[DEFENSE COUNSEL]: Yes, it is.

\* \* \* \* \* \*

[COUNTY ATTORNEY]: I've got one other thing I want to put on the record before we go into the guilty plea. We touched upon this, but I believe it is specifically understood between the parties *that [Appellant] will waive all constitutional rights to a speedy trial from and after today, May 11, 1990.*

[DEFENSE ATTORNEY]: Yes.

[COUNTY ATTORNEY]: *And all IAD, the interstate agreement on detainer statutory rights, from and after today, May 11, 1990, but preserves any rights which may have accrued prior to that time.*

[DEFENSE ATTORNEY]: Yes.

THE COURT: All right.

(emphasis added). The district court then proceeded to inform the defendant of the effect of a guilty plea, to insure that the plea was voluntary, and to question appellant concerning the events to assure that a factual basis existed for the guilty plea.

The precise terms of the plea agreement are not easily discernable from the tran-

script of the change-of-plea hearing. Appellant claims that he preserved certain objections for this appeal. He bases this assertion on the following statements: (1) "[Appellant] will waive all constitutional rights to a speedy trial from and after May 11, 1990"; and (2) "And all IAD, * * *, from and after today May 11, 1990, *but preserves any right which may have accrued prior to that time.*" (emphasis added). This language appears to support appellant's view that all the parties involved understood the plea agreement to specifically preserve appellant's right to challenge any speedy trial or IAD issue which arose prior to the May 11, 1990 hearing.

After careful review of this plea hearing transcript, we discern the following terms and conditions. First, appellant agreed to plead guilty to aiding and abetting and attempted manslaughter in exchange for the county attorney's promise to drop the conspiracy to commit murder charges. Second, the county attorney agreed to permit appellant to petition the Wyoming Supreme Court for a writ of certiorari on his own behalf. Third, the county attorney agreed that if codefendant's second conviction was reversed by the Wyoming Supreme Court based on IAD violations then, and only then, would the county attorney dismiss all charges against appellant. Fourth, appellant was permitted to preserve for this appeal any speedy trial or IAD issue which arose before May 11, 1990. Last, the county attorney agreed that appellant's guilty plea would not be entered, as of record, until after codefendant's appeal was completed.

On May 11, 1990, when appellant's change-of-plea hearing occurred, the Wyoming Rules of Criminal Procedure had no provision permitting entry of a *conditional plea of guilty.*[4] On this point, this court has stated:

> A few jurisdictions have provided for a contrary result by enacting statutes which permit the defendant to enter a guilty plea conditioned upon reservation

of the right to appeal specified issues. Wyoming is not among them. Instead, we have maintained the position that the defendant who pleads guilty admits the elements of the crime charged and waives the right to appeal all but a few defenses and objections.

*Sword v. State,* 746 P.2d 423, 425 (Wyo. 1987) (citations omitted).

The terms of the agreement, as portrayed in the transcript from the change-of-plea hearing, demonstrate an attempt to permit appellant to preserve certain defenses or objections for appeal. That amounts to a *conditional guilty plea.* In two previous cases, this court has been faced with attempted conditional pleas of guilty. *Vallo v. State,* 726 P.2d 1045 (Wyo.1986); *Tompkins v. State,* 705 P.2d 836 (Wyo. 1985). In both instances this court reversed the conviction, which had been based on a conditional guilty plea, and remanded to the district court for the taking of a proper plea. *Vallo,* 726 P.2d at 1046; *Tompkins,* 705 P.2d at 840.

Because of the peculiar circumstances of this case, we find that the formal entry and acceptance of appellant's plea did not occur until appellant's sentencing hearing. We reach this conclusion based upon statements made at both the change-of-plea hearing on May 11, 1990, and the sentencing hearing on June 29, 1992. At the May 11, 1990 change-of-plea hearing, the county attorney made two separate statements evidencing an agreement by all parties that the plea was to be formally entered at a later date. First he said:

> [COUNTY ATTORNEY]: I would also point out for the record that the *guilty plea to this case or to this charge would not be entered until the appeal has been completed* so that the defendant does not waive those issues referred to already by [Defense Counsel].

Later the following exchange occurred:

> [COUNTY ATTORNEY]: Procedurally, might I suggest that you found that

---

4. Former Rule 15, Wyo.R.Crim.P. (1991 Repl.), permitted a criminal defendant to plead "not guilty, not guilty by reason of mental illness or deficiency, unfit to proceed by reason of mental illness or deficiency, guilty, or nolo contende-

re." There was no provision permitting a conditional plea of guilty. However, the rules were revised in 1992 to permit a criminal defendant to enter a conditional plea of guilty. *See* Wyo. R.Crim.P. 11(a)(2) (1992).

there is a factual basis for the plea and you've accepted the plea. *If the Court were not to enter the plea of record at this point, would that make a difference procedurally until the contingencies occur that we talked about?* Then we could take up sentencing at that point.

[DEFENSE COUNSEL]: *That would be better, I think.*

THE COURT: Then [Appellant] can waive delay.

[DEFENSE COUNSEL]: From and after.

THE COURT: And he does waive it.

[DEFENSE COUNSEL]: For purposes of that, yes, we would waive the delay in sentencing, your Honor.

[COUNTY ATTORNEY]: Would [Appellant] also waive any procedural defects in the way we are doing this today?

THE COURT: That's rather novel, [County Attorney].

[DEFENSE COUNSEL]: Gentlemen, I don't know. There's been so many. I think so. I've been a party to that so it's a little hard to raise those issues.

[COUNTY ATTORNEY]: [Appellant] do you agree with that?

[APPELLANT]: I agree with [Defense Counsel].

THE COURT: We want to know if you agree with what is being done here.

[APPELLANT]: Yeah.

THE COURT: You may not like it but you agree with it.

[APPELLANT]: Yeah, like, I've—I've got faith in [Defense Attorney]. If he says it's good, it's good as far as I'm concerned.

At the sentencing hearing, on June 29, 1992, the district court reaffirmed the intent to save formal entry of the plea until after the May 11, 1990 change-of-plea hearing. After discussing the terms and conditions of the plea agreement the court said:

THE COURT: All right. The court then will accept the conditions of the negotiations and sentence * * *.

We hold that appellant's plea of guilty, conditioned upon preservation of the right to appeal IAD and speedy trial issues which may have accrued before May 11, 1990, was permissible because at the time appellant's plea of guilty was formally entered, the new rule was in effect allowing for a conditional plea of guilty. *See* Wyo. R.Crim.P. 11 (1992). Therefore, the *Vallo/Tompkins* line of cases is inapplicable, and we must address appellant's substantive issue concerning the IAD.

### IAD

█ Although appellant appears to present several issues for our review, in essence he is making a single objection: the state violated the IAD by failing to try appellant within 120 days after his arrival in the state.

In *Jones II*, appellant's codefendant raised precisely the same issue, based upon almost the same circumstances. 813 P.2d at 629. The only difference between the two is that appellant arrived in Wyoming three months after codefendant, and appellant was scheduled to be tried three days after codefendant.

In all prosecutions made possible by the IAD, proceedings must be commenced within 120 days of the defendant's arrival in the prosecuting state. WYO.STAT. § 7–15–101, Art. IV(c) (1987); *see also Jones II*, 813 P.2d at 631. However, the 120 day time period will be tolled at any time and for as long as the defendant is "unable to stand trial." *Id.* In *Jones II*, we found no violation of the IAD because the 120 day period was tolled by codefendant's numerous pre-trial motions, including the motion to disqualify the initial trial judge. *Jones II*, 813 P.2d at 632. In reaching this conclusion we said:

A delay of almost three months for the new judge to assume charge of a proceeding and to decide motions of the type involved here is neither unexpected nor unreasonably lengthy. *United States v. Taylor*, 861 F.2d 316 (1st Cir.1988); *State v. Finley*, 277 S.C. 548, 290 S.E.2d 808 (1982).

*Jones II*, at 632.

This reasoning applies equally to appellant. Appellant and codefendant, after their first convictions were overturned, were to be retried together. After remand from this court, both appellant and code-

fendant filed motions to disqualify the trial judge on August 2, 1989. Appellant then filed eleven pre-trial motions on November 7, 1989, just as codefendant had done in September of that same year.

Therefore, as we held in *Jones II*, we find no error by the state under the IAD because the 120–day period was tolled by appellant's pre-trial motions and did not begin running until February 7, 1990. The total elapsed time for IAD purposes, before appellant's change-of-plea hearing, was only ninety-three days. Appellant's conviction is affirmed.